UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL MOCK,

                        Plaintiff,

   -v-                                                      6:10-CV-919

THE CITY OF ROME and THE CITY OF
ROME POLICE DEPARTMENT,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

Tully Rinckey PLLC                         DOUGLAS J. ROSE, ESQ.
Attorneys for Plaintiff
441 New Karner Road
Albany, NY 12205

OFFICE OF CORPORATION COUNSEL    GERARD F. FEENEY, II, ESQ.
   CITY OF ROME                         Ass't Corporation Counsel
Attorneys for Defendants
198 North Washington Street
Rome City Hall
Rome, NY 13440

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Michael Mock ("plaintiff" or "Mock") brought this action against defendants the

City of Rome (the "City") and the City of Rome Police Department ("RPD") (collectively

"defendants") alleging discrimination under the Uniformed Services Employment and

Reemployment Rights Act, 38 US.C. § 4311 ("USERRA"), and New York Military Law section 318.

Defendants moved for summary judgment pursuant Federal Rule of Civil Procedure 56. Plaintiff opposed. Oral argument was held on March 23, 2012, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Unless otherwise noted, the following facts are viewed in the light most favorable to plaintiff, the non-movant, as must be done on a summary judgment motion.

At all relevant times, Mock was a member of the United States Air Force Reserve ("Reserve"). In May 1990, he was appointed as a police officer in the RPD. Following his entrance into the RPD, plaintiff's Reserve unit was deployed in October 1990 to the United Arab Emirates. He was later deployed to Somalia in September 1992 for thirty days. Sometime in 1992 plaintiff requested RPD supervisors schedule him to attend a Police Instructor Training Course. He was scheduled to take the course three times but each time the request was cancelled.

Plaintiff alleges that between 1992 and 1995, he was harassed by then-Deputy Chief Patrick Miller ("Miller") regarding his military status. He asserts Miller called his wife to inquire about the legitimacy of his Reserve duties and later called his Reserve unit demanding personnel records. Further, Miller drafted and sent a memorandum to the RPD requiring all officers in the National Guard and Reserve to submit a written memorandum regarding their duty time. The memorandum advised that no military leave days would be granted without a specific duty assignment. In June 1995, Miller sent plaintiff a memorandum asking for him to provide: "[T]he name of your commanding general as I wish

to advise him of the lack of professionalism on their part." Compl., Dkt. No. 1, ¶ 13. According to Mock, this request was based on Miller's desire to discuss short notice military tours in which Mock was required to participate.

Meanwhile, at some point in 1993, an issue arose between plaintiff and the RPD regarding misuse and/or abuse of military leave time, which resulted in RPD charges being filed against Mock on February 17, 1994. He pleaded guilty to those charges and agreed to forfeit two days of personal leave and one holiday, as well as pay a $200 fine.

In September 1997 plaintiff was deployed for a 30 day tour in Bosnia-Herzegovina. In 1998, he took the RPD Sergeant's exam in hopes of being promoted. His score placed him in the number one spot on the promotion list, but he was not promoted. Between 1998 and 2000, six people other than Mock were promoted to Sergeant.

In September 2001 Mock's Reserve unit was deployed for ten days after the terrorist attacks on September 11, 2001. In 2002 he again placed first on the Sergeant's exam, and also first on the Detective's exam. In March 2003 he was deployed as part of Iraqi Freedom. In 2004, he again placed first on the Sergeant's exam and third on the Detective's exam, but was not promoted. In December 2004 the RPD promoted two officers to Sergeant and one to Detective. Mock was not selected for promotion.

In the summer of 2005, RPD information technology ("IT") administrator, John Keys ("Keys") sought an RPD officer to assist him with IT management at the RPD. Plaintiff advised he was interested in the position. Another officer also expressed his interest to Keys. According to Keys, he submitted the two names to then-Chief Otto Panara ("Panara"). Keys testified that Panara stated to him "we have other plans for Mike" and that "I could not

put Mike in that position because he is always out playing war games." John C. Keys Aff., Jan. 23, 2012, ¶ 8. Mock did not receive the IT assignment.

In 2005 Mock once again achieved the top score on the Sergeant's exam, and placed third on the Detective's exam. From August 2005 to August 2006, plaintiff's Reserve unit was deployed to Qatar. In December 2005 while plaintiff was in Qatar, the RPD promoted one officer to Sergeant and two to Detective. Mock contends he was never notified of these promotions. In October 2006 the RPD promoted one officer to Detective. Again, Mock was not selected for promotion. In 2007 plaintiff took the Detective exam again and placed first on the eligible list. In April 2007 Mock was finally promoted to Sergeant.

Between 2007 and 2008, the RPD made promotions to Lieutenant, which Mock was not eligible for because he needed two years time-in-grade as a Sergeant to qualify as a Lieutenant. In September 2008 he made a formal request to the City for a waiver so he could take the Lieutenant promotional exam. The Civil Service Commission initially approved his request but it was ultimately denied by the City. He was not permitted to take the Lieutenant promotional exam.

Plaintiff also contends that his military status was negatively referenced in several otherwise positive performance evaluations. In an October 2007 routine evaluation, Mock met or exceeded all RPD standards. In the comments section of the form, the evaluating Lieutenant noted Mock had improved by redirecting his approach with subordinates away from "a more 'military' way of dealing with them." Compl., ¶ 25.

In an October 2008 routine evaluation, Mock met or exceeded all RPD standards except the attendance criterion. It was noted that he used nine sick days, one in conjunction with military leave. The comments section included the following: "Coming from more of a

military background than most of the officers he deals with, he needed to move away from a more autocratic supervisory demeanor." Id. ¶ 28. The evaluating Lieutenant also wrote: "One area that does cause somewhat of a distraction to the smooth supervision of C-Line, albeit, unintentional, unavoidable . . . is Sgt. Mock's military leave. At times his absence can create a supervisory gap that can be difficult to fill." Id.

In a March 2010 routine evaluation, Mock met or exceeded all RPD standards. Under the attendance section, the evaluation noted that it "[r]eflects all absences from duty for illness . . . for necessary or desirable counseling of an employee regarding his/her improper or excessive use of leave privileges." Id. ¶ 29. Twenty-two days of military leave were listed under the section reflecting all absences from duty for illness, despite the fact that military leave does not count as "absences from duty for illness."

Mock retired from the RPD at the rank of Sergeant in June 2010. He filed this lawsuit in July 2010. Specifically, Mock asserts the following three claims: (1) he was denied the opportunity to work without harassment based on his military status in violation of USERRA, 38 U.S.C. § 4311(a); (2) he was denied the opportunity to be promoted to Sergeant, Detective, and later Lieutenant in violation of USERRA, 38 U.S.C. § 4311(a); and (3) he was discriminated against based on his military status in violation of New York Military Law section 318.

## III. LEGAL STANDARD–SUMMARY JUDGMENT

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511. A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248–49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

### A. USERRA Claims

USERRA prohibits discrimination on the basis of military status. See 38 U.S.C. § 4301(a). The statute applies to both reservists and non-reservists. Id. § 4303(13). It was enacted in 1994 to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." Gummo v. Vill. of Depew, 75 F.3d 98, 105 (2d Cir. 1996). "As with its predecessor, the Veterans Readjustment Assistance Act (VRAA) of 1974, USERRA is to be 'broadly construed in favor of its military beneficiaries.'" Woodard v. N.Y. Health and Hosps. Corp., 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008) (quoting Hill v. Michelin N. Am., Inc., 252 F.3d 307, 312–13 (4th Cir. 2001)).

USERRA's anti-discrimination provision is found in § 4311, which provides that a member of a uniformed service "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). A "benefit of employment" is defined broadly under USERRA as "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement." Id. § 4303(2).

An employer engages in a prohibited act under § 4311 "if the person's membership . . . is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." Id. § 4311(c)(1). Thus, an individual's military status need not be the sole factor for the decision, it needs only to be a motivating factor. See Gummo, 75 F.3d at 105–07; see also Woodard, 554 F. Supp. 2d at 348 ("USERRA liberalized this requirement by providing that a violation could be established if the individual's military service was a 'motivating factor' in the discriminatory action, even if it was not the only factor.").

USERRA discrimination claims employ a two-pronged burden-shifting analysis. Gummo, 75 F.3d at 106 (citing NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 401, 103 S. Ct. 2469, 2474 (1983), abrogated on other grounds by Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries, 512 U.S. 267, 114 S. Ct. 2251 (1994)). To establish a prima facie case of discrimination under USERRA, the plaintiff has the burden of proving by a preponderance of the evidence that his protected status was a substantial or motivating factor in an adverse employment action. Id. "'Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that

consideration.'" Woodard, 554 F. Supp. 2d at 348 (quoting Fink v. City of N.Y., 129 F. Supp. 2d 511, 520 (E.D.N.Y. 2001)).  A "motivating factor" means that "if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." Id. (internal quotations omitted).  After the plaintiff establishes that his protected status was a motivating factor in the employer's decision, the burden shifts to the employer.  Id. at 349.  The employer may "escape liability by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status." Gummo, 75 F.3d at 106.

### 1. Harassment

Plaintiff's first cause of action asserts a claim for harassment under USERRA.  Mock asserts that the term "benefit of employment" in 38 U.S.C. § 4311(a) should be interpreted to include freedom from a hostile work environment.  Specifically, he contends Miller's actions in the 1990s and the military-related comments in his evaluations constituted harassment.  Defendants argue this claim must be dismissed because there is no evidence of severe or pervasive harassment.  Plaintiff insists that the frequency, severity, and reasonableness of the conduct are questions for a jury.

The Supreme Court has not considered whether a hostile work environment claim is cognizable under USERRA.  See Carder v. Cont'l Airlines, Inc., 636 F.3d 172, 175 (5th Cir. 2011), cert. denied, 132 S. Ct. 369 (2011).  The Fifth Circuit in Carder was the first, and only circuit court to consider the issue on the merits.  Id.  After a lengthy discussion on statutory interpretation, a review of USERRA's legislative history, and an analysis of hostile work environment claims under Title VII, the Carder Court concluded that USERRA does not

create a cause of action based on a hostile work environment. Id. at 175–82. Several other circuit courts have assumed such a claim exists while disposing of the claim on other grounds. See Vega–Colon v. Wyeth Pharms., 625 F.3d 22, 32 (1st Cir. 2010) ("For purposes of this decision we assume, without deciding, that it is [actionable]."); Dees v. Hyundai Motor Mfg. Ala., LLC, 368 F. App'x 49, 53 (11th Cir. 2010) (per curiam) (unpublished) ("Assuming without deciding that harassment or hostile work environment is a cognizable claim under USERRA, Dees lacks standing to bring such a claim."). No district courts in the Second Circuit have addressed the issue.

The Supreme Court has noted that USERRA is very similar to Title VII, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. See Staub v. Proctor Hosp., 131 S. Ct. 1186, 1191 (2011). Hostile work environment claims are actionable under Title VII. See e.g., Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073 (2002). A hostile work environment exists "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (internal quotations and citations omitted)).

There is no need to decide whether a hostile work environment claim is actionable under USERRA because plaintiff has not put forth any alleged conduct which would rise to the level required for a hostile work environment claim. Taking guidance from Title VII case law, defendants' conduct must have been so severe or pervasive that it altered the conditions of Mock's employment and created an abusive working environment at the RPD. There is no evidence of that type of conduct. None of the alleged conduct, including the telephone calls

to Mock's wife, inquiries with his Reserve unit, the comment about him playing war games, nor the notations in his performance evaluations were severe or pervasive enough to constitute a hostile work environment.  This is particularly true considering the number of years over which these acts occurred.

Because none of the alleged conduct rises to the level required for a hostile work environment claim—should such a claim even be actionable under USERRA—defendants' motion for summary judgment dismissing the first cause of action will be granted.

### 2. **Failure to Promote**

Plaintiff's second cause of action alleges he was denied promotions in violation of USERRA.  Defendants argue this claim must be dismissed because there is no direct evidence that Mock's military status was a motivating factor in the decisions not to promote him.  They support this contention by pointing to the lack of temporal proximity between Mock's deployments and any denial of promotions.  Finally, they defend the decisions not to promote him by relying on the New York Civil Service Law, which provides that the RPD may choose from amongst the top three individuals on an eligible list.  Plaintiff contends there is ample evidence on which a jury could conclude his military status was a motivating factor in the failure to promote him, including Miller's inquiries and attitude toward him in the 1990s; his repeated high scores on the promotional exams; Panara's statement that he was "out playing war games"; and comments in his performance evaluations referencing his military status.

It is undisputed that Mock's Reserve status makes him a member of a protected group under USERRA, and that he suffered adverse employment actions by failing to be promoted. Mock need not establish his military status was the sole reason for the RPD's failure to

promote him to Sergeant, Detective, and/or Lieutenant; he must simply prove it was a motivating factor. Temporal proximity is not the only way to do that. IT administrator Keys' testimony that Panara stated he "could not put Mike in that position because he is always out playing war games" is certainly evidence which suggests Mock's military status was a motivating factor, as is the fact that Mock was passed over multiple times for promotions despite his high scores on promotional exams.

Defendants are free to argue at trial that the acts are too attenuated; that Panara's statement was a joke or taken out of context; or that the RPD relied on other factors beside test scores and seniority when making the promotions. They may avoid liability by showing they would have made the same decisions without regard to Mock's protected status. However, these are issues for a jury to decide and therefore summary judgment is inappropriate. Taking all of the evidence in a light most favorable to plaintiff, there are genuine issues of material fact for trial concerning whether Mock's military service was a motivating factor in his failure to be promoted and whether RPD would have taken the same employment actions in the absence of Mock's protected status.

Thus defendants' motion for summary judgment dismissing this claim will be denied.

### B. New York State Military Law Claim

Defendants assert Mock's state law claim must fail because New York Military Law section 318 does not create a private right of action. They argue section 318 is merely a statement of New York's policy on discrimination against members of the uniformed services. In response, plaintiff agrees that section 318 reiterates New York's policy against discrimination, but asserts a claim may be brought pursuant to New York Military Law section 242. Section 242 precludes the diminution of a public employee's employment rights by

reason of the employee's absence pursuant to ordered military duty.  See N.Y. Mil. Law § 242(4).

At oral argument, defendants conceded that a claim may be brought pursuant to section 242, but argued plaintiff's claim should be dismissed because the complaint only cites section 318.  Plaintiff acknowledged the absence of a citation to section 242 in the complaint, but urged that the allegations comply with the notice pleading requirements under the Federal Rules of Civil Procedure and thus state a claim under section 242.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).  Rule 8(e) further advises that "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Thus it must be determined whether plaintiff's allegations gave defendants fair notice of a claim arising under section 242.

To state a viable claim under section 242, a complaint must allege that the plaintiff was "'subjected, directly or indirectly, to any loss or diminution of time service, increment, vacation or holiday privileges, or any other right or privilege, by reason of such absence, or be prejudiced by reason of such absence . . . with reference to continuance in . . . employment . . . re-employment, reinstatement, transfer or promotion.'"  Wang v. N.Y.S. Dep't of Health, 33 Misc. 3d 1038, 1044 (N.Y. Sup. Ct. Albany Cnty. 2011) (quoting N.Y. Mil. Law. § 242(4)).  The allegations in the complaint assert that the claim is brought under New York Military Law; that the defendants' motive for harassing and discriminating against Mock was due to his membership in the uniformed services; and that he suffered loss of past and

future earnings and loss of past and future benefits. See Compl., ¶¶ 46–49. As required to state a claim under section 242, the complaint alleges Mock was subjected to loss of employment privileges and prejudiced by reason of his participation (and deployments) in the United States Air Force Reserve. The complaint sufficiently puts forth facts to give defendants notice of a claim alleging military discrimination under New York Military Law.

Therefore defendants' motion for summary judgment dismissing this claim will be denied and plaintiff's claim under section 242 may proceed.

**C. Laches**

There is no statute of limitations for USERRA claims. See 38 U.S.C. § 4327(b)[1] ("[T]here shall be no limit on the period for filing the Complaint or claim under USERRA."). Despite this, defendants argue Mock's claims are barred by the doctrine of laches because he unreasonably delayed filing this action and they are prejudiced by the delay. They assert that the discriminatory acts complained of by plaintiff allegedly occurred eighteen years prior to his filing the complaint in this action. Further, the December 2004 promotion—central to Mock's allegations—occurred six years prior to the initiation of this lawsuit. Defendants contend this delay has made it difficult to locate witnesses and defend the allegations because most of the employees mentioned in Mock's claims no longer work at the RPD.

"'A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay.'" Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326

---

[1] The Veterans' Benefits Improvement Act, Pub. L. No. 110–389, 122 Stat. 4145, passed in October 2008, amended USERRA by removing the reference to the state statute of limitations in 38 U.S.C. § 4323(i). That reference was replaced with a provision stating that no limitations period applies to USERRA claims.

(2d Cir. 2004) (quoting King v. Innovation Books, 976 F.2d 824, 832 (2d Cir. 1992)).  Laches is an affirmative defense and the burden of proving laches rests with the defendants.  See Fed. R. Civ. P. 8(c).  With regard to delay, plaintiff contends he filed this lawsuit one month after he retired and did not do so earlier out of fear of retribution from the RPD.  Mock further avers that all witnesses are available; there has been no spoliation of evidence; and all documentary evidence including promotional exam results, promotion lists, and performance reports have all been adduced through discovery.  Defendants have not shown Mock unreasonably lacked diligence in bringing this action nor have they demonstrated actual prejudice as a result of any delay.  Speculation is not enough.

Because they have not satisfied their burden of establishing the affirmative defense of laches, defendants' motion for summary judgment on this basis will be denied.

### D.  Defendant Rome Police Department

Finally, defendants argue RPD must be dismissed because it is not a suable entity.  Plaintiff conceded this at oral argument.  It is well established that a police department is an administrative arm of a municipal corporation and cannot be sued independently because it does not exist separate and apart from the municipality.  See e.g., Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (Hurd, M.J.).

Accordingly, defendants' motion for summary judgment dismissing the RPD will be granted and the complaint against it will be dismissed.

## V.  CONCLUSION

Defendants' motion for summary judgment will be granted in part and denied in part.  Summary judgment dismissing the harassment claim will be granted because there are no facts on which a reasonable fact finder could return a verdict for the plaintiff on that claim.

Summary judgment dismissing the failure to promote claim will be denied because there are issues of fact as to whether Mock's military status was a motivating factor in the decisions not to promote him. Summary judgment dismissing Mock's state law claim will also be denied because the complaint gave defendants adequate notice of a claim arising under section 242 of the New York Military Law.

Moreover, defendants cannot rely on the affirmative defense of laches because they have not demonstrated Mock unreasonably delayed in bringing this lawsuit and that they were prejudiced by such delay. Finally, the RPD will be dismissed as a defendant because it is not a suable entity.

Therefore, it is

ORDERED that:

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. The complaint against defendant The City of Rome Police Department is DISMISSED;

3. Plaintiff's First (Harassment under USERRA) Cause of Action is DISMISSED; and

4. Plaintiff's Second (Denial of Promotions under USERRA) and Third (Discrimination under New York Military Law) Causes of Action remain for trial against the City of Rome.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 29, 2012
      Utica, New York.